Ronald Robson, Petitioner *v.* Edward Biester, Attorney General of the State of Pennsylvania et al., Respondents.

Submitted on briefs, September 19, 1979, to President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt, DiSalle, Craig and MacPhail.

*Ronald Robson*, petitioner, for himself.

*J. Andrew Smyser*, Deputy Attorney General, with him *Edward G. Biester, Jr.*, Attorney General, for respondents.

Opinion by Judge Crumlish, Jr., September 3, 1980:

Ronald Robson filed a petition for review[1] seeking to restrain state correctional authorities[2] from transferring him from Graterford State Prison to another

---

[1] This petition for review shall be treated and acted upon as one addressed to this Court's original jurisdiction pursuant to the Pennsylvania Rules of Appellate Procedure and Section 761 of the Judicial Code, 42 Pa. C.S. §761.

[2] Respondents in the above captioned matter are Edward Biester, Attorney General of the State of Pennsylvania; Pennsylvania Bureau of Corrections; Graterford State Prison.

state correctional facility; to compel the expungement of his prison record by prison authorities of all misconduct charges relating to April 15, 1977; and to compel state correctional authorities to restore his "status as a good prisoner" making him eligible to participate in "pre-release" and "work-release" programs.[3]

The Commonwealth has filed preliminary objections to set aside the petition, alleging failure to state a cause of action. The preliminary objections are sustained and the petition is dismissed.

On April 15, 1979, while an inmate at SCI-Graterford,[4] a prison guard accused Robson of fighting. After a hearing, he was adjudged by a hearing tribunal to have committed the misconduct and thereupon placed in the Restrictive Housing Unit.

The hearing tribunal also recommended that Robson be transferred to another state correctional institution to separate him from two other inmates. This was affirmed by the Program Review Committee.[5] There is some dispute as to whether these two inmates were involved in the April 15, 1977 altercation.

First, Robson challenges the power of state correctional authorities to transfer him to a different facility when that decision is based *solely* upon the authority's perception of need. He avers that prior to any transfer determination he must be afforded a due process hearing on the merits of the transfer and disclosure of the facts subsequently relied upon in the determination. Failure to comply with these requirements he contends is a violation of the due process clause of the United States Constitution.[6]

---

[3] *See* Section 1 of the Act of July 16, 1968, P.L. 351, *as amended,* 61 P.S. §1051.

[4] State Correctional Institution at Graterford.

[5] At the time of this adjudication, there is no indication in the record whether or not Robson was in fact transferred.

[6] Fifth and Fourteenth Amendments of the United States Constitution.

We must disagree.

In *Meachum v. Fano,* 427 U.S. 215 (1976), the United States Supreme Court held that, absent statutory authority, a convicted state prisoner is *not* entitled to a hearing prior to transfer to another prison, even where conditions are considerably less favorable unless such transfer is punitive in nature and for demotional disciplinary reasons.

Robson does not allege in his petition that the determination to transfer was either punitive or discriminatory.[7] Therefore, he fails to state a cause of action on these grounds.

Second, Robson contends that the evidence produced at his misconduct hearing was insufficient to support the hearing tribunal's findings. In particular, he avers that failure by the Commonwealth to produce eyewitnesses or charge two other inmates in connection with the fight is a deprivation of his "status as a good prisoner" and his right to participate in "pre-release" and "work-release" programs without due process of law.

Again, we disagree.

At the outset, it must be observed that Robson does not allege that he has applied for and been denied the opportunity to participate in either of these two programs, but rather that the misconduct notation on his prison record will prevent or prejudice his ability to participate in such program at a future date. There is some question therefore as to the ripeness of his request for judicial relief.

Assuming, arguendo, that such application was made by Robson and denied, our decision is unchanged. Special privileges for satisfactory behavior in prison

---

[7] Under Pennsylvania law, the decision to transfer an inmate to another correctional facility is within the discretion of the Deputy Commissioner for the Bureau of Corrections. Penal and Correctional Institutions Act, 61 P.S. §78.

are not guaranteed by the United States Constitution but created by state statute. Therefore, the full panoply of rights due a defendant in a criminal prosecution is not necessary in a prison disciplinary proceeding taking away these privileges for misconduct. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

Procedural due process is satisfied in prison disciplinary proceedings resulting in the loss of benefits when the inmate is afforded with (1) written notice of the violation charged at least 24 hours in advance of hearing; (2) a written statement by the factfinders as to the evidence relied upon and reasons for the disciplinary action; and (3) the right to call witnesses on his own behalf and to present documentary evidence when institutional safety or correctional goals will not be unduly placed in hazard. *Wolff v. McDonnell, supra.*

Robson does not aver that he has been denied these safeguards.

Further confrontation and cross-examination are not required in such proceedings. Therefore, Robson's allegation that he has been denied procedural due process because of the Commonwealth's failure to produce an eyewitness is unwarranted. *Wolff v. McDonnell, supra.*

In reality, Robson seeks review by this Court of the sufficiency of the evidence or findings of fact made by the hearing tribunal at SCI-Graterford.

A decision by an intra-prison disciplinary tribunal is not a final adjudication by an administration agency within this Court's appellate jurisdiction, 42 Pa. C. S. §763.

Nor may we review such matters in a prisoner's civil action seeking redress for alleged deprivation of his constitutional rights. *See Rivera v. Toft*, 477 F.2d 534 (10th Cir. 1973); *Tawney v. McCoy*, 462 F. Supp. 752 (N.D. W.Va. 1978).

*First,* the operation of correctional facilities is peculiarly within the province of the legislative and executive branches of the government and not the judicial branch. *Bell v. Wolfish,* 441 U.S. 520 (1979).

*Second,* prison officials must be accorded wide ranging deference on the adoption and execution of policies and practices that in their judgment are necessary to preserve internal order and to maintain institutional security. In the absence of substantial evidence in the record to indicate that the officials have exaggerated the response to these considerations, the Court should defer to their expert judgment in such matters. *Bell v. Wolfish, supra.*

Therefore, inquiry by the Courts into prison management, of which discipline is an essential element, must be limited to the issue of whether a particular system violated any prohibition in the constitution; and actions of prison officials in disciplining inmates are not subject to judicial review in the absence of arbitrariness or capriciousness. *See Tawney v. McCoy, supra; Rivera v. Toft, supra.*

This is not to say that once imprisoned, an individual may be deprived of his constitutional rights and protections, but rather that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). An inmate may be lawfully subjected to the rules of the prison system and the procedures for the enforcement of these regulations so long as the conditions of confinement do not otherwise violate the constitution. *Bell v. Wolfish, supra.*

Robson has not alleged an unconstitutional condition of confinement or any fact from which we might infer an allegation that prison discipline action was arbitrarily or capriciously imposed.

Accordingly, we

ORDER

AND NOW, this 3rd day of September, 1980, upon consideration of the briefs, respondents' preliminary objections are sustained and the petition for review is dismissed.

President Judge BOWMAN and Judge DISALLE did not participate in the decision in this case.