IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rashad M. Williams, :
                     Petitioner :
                      :
        v. :
                      :
Pennsylvania Department of :
Corrections; SCI-Fayette, S. Greene, :
Lobby Officer; Carrie Luster, Unit :
Manager; Tina Walker, Facility :
Manager, : No. 108 M.D. 2024
              Respondents : Submitted: December 8, 2025

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MATTHEW S. WOLF, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON            FILED: January 13, 2026

       Before this Court in our original jurisdiction are preliminary objections filed by Respondents, who are the Pennsylvania Department of Corrections (DOC); the State Correctional Institution at Fayette (SCI-Fayette); and SCI-Fayette personnel S. Greene (Greene), Carrie Luster (Luster), and Tina Walker (Walker). Respondents filed these preliminary objections in response to the *pro se* petition for review (Petition) filed by Petitioner Rashad M. Williams (Williams). Respondents contend that Williams has failed to demonstrate a clear and legally sufficient right to relief. Upon review and in accordance with *Gentilquore v. Pennsylvania Department of Corrections*, 326 A.3d 512 (Pa. Cmwlth. 2024), we dismiss Williams's Petition for lack of jurisdiction and dismiss Respondents' preliminary objections as moot.

## I. Factual and Procedural Background

On February 12, 2024, Williams filed his Petition. He asserted that he was an inmate at SCI-Fayette and had been receiving personal "contact" visits and then "virtual" visits from his wife and daughter since 2016.[1] *See* Petition at 1. He alleged that Respondents subsequently prohibited these visits, and he was unable to resolve the issue via verbal requests, written requests, or grievances. *Id*. at 1-2. He averred that this violated DOC policies as well as his due process rights and sought mandamus relief, specifically an order from this Court compelling Respondents to allow visits from his wife and daughter. *Id*. at 2. He appended no attachments to the Petition but did file a memorandum of law suggesting that the problem may have pertained to his wife's change of address or a technical issue involving his wife's account on the DOC's visitation registration site. Memorandum of Law in Support of Petition, Feb. 12, 2024, at 2-3.

Thereafter, both sides filed various motions and applications, none of which remain at issue, through December 2024, when Respondents filed their preliminary objections.[2] Respondents asserted that the Petition failed to cite any relevant facts concerning why Williams was told that the visits were barred or a legally sufficient claim upon which relief could be granted. *See* Preliminary

---

[1] We accept the Petition's factual averments as true for purposes of ruling on the present preliminary objections. *See Barndt v. Dep't of Corr.*, 902 A.2d 589, 592 (Pa. Cmwlth. 2006).

[2] One of the now-resolved ancillary issues involved Respondents' assertion that Williams failed to properly serve the Petition on Respondents Greene and Luster. This Court's December 2, 2024, Order stated that Williams had established service on Greene and Luster and directed them to file "an answer or other responsive pleading" by January 3, 2025. Order, Dec. 2, 2024. On December 30, 2024, Greene and Luster filed preliminary objections identical to those previously filed on December 2, 2024, by the DOC, SCI-Fayette, and Respondent Walker. This opinion cites to the December 2, 2024, filing.

Objections, Dec. 2, 2024, at 6-9. Respondents added that DOC policies do not create actionable rights and that prison visitation does not entail due process or any other constitutional protection. *Id.* This Court has received briefs from both parties and Respondents' preliminary objections raising the above-noted issues are now ripe for review. *See* Order, June 16, 2025.

## II. Discussion

In ruling on preliminary objections, this Court accepts as true all well-pled allegations of material fact in the petition for review, as well as all inferences reasonably deducible from those facts. *Dantzler v. Wetzel*, 218 A.3d 519, 522 n.3 (Pa. Cmwlth. 2019). However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. *Id.* For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. *Id.* Any doubt must be resolved in favor of the non-moving party. *Id.*

Our Supreme Court has recognized that mandamus relief is "an extraordinary action at common law and is available only to compel the performance of a ministerial act or mandatory duty where there exists no other adequate and appropriate remedy"; there must be "a clear legal right in the [petitioner], and a corresponding duty in the [respondent]." *McCray v. Pa. Dep't of Corr.*, 872 A.2d 1127, 1131 (Pa. 2005). The purpose of mandamus relief is not to establish legal rights, but to enforce those rights already established beyond question. *See Africa v. Horn*, 701 A.2d 273, 275 (Pa. Cmwlth. 1997). Mandamus "is not a vehicle through which a petitioner can interfere with a public official's exercise of discretion" and cannot be used to "direct a public official to exercise discretion in a

3

particular way." *Sinkiewicz v. Susquehanna Cnty. Bd. of Comm'rs*, 131 A.3d 541, 546 (Pa. Cmwlth. 2015).

A narrow category of prisoner due process claims falls within our original jurisdiction. *Gentilquore*, 326 A.3d at 516. A petitioner must identify a "constitutionally-protected liberty or property interest" that is not "limited by [DOC] regulations but is affected by a final [DOC] decision." *Id*. States may also create a liberty or property interest protected by due process by adopting regulations that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 516-17. In such cases, the focus of inquiry is on the nature of the alleged deprivation, not the language of a particular regulation. *Id*. at 517. Absent a protected interest, this Court lacks jurisdiction to consider a claim in this context. *Id*. at 517-18 (rejecting petitioner's challenge based on DOC regulations concerning medical treatment and assessment of prisoner fees for treatment because "there is no constitutional right to be free of co-payments" and "these regulations do not create a protected interest, the alleged deprivation of which would trigger this Court's original jurisdiction").

Relatedly, "allegations that the [DOC] failed to follow its regulations or internal policies cannot support a claim based upon a vested right or duty because these administrative rules and regulations, unlike statutory provisions, usually do not create rights in prison inmates." *Shore v. Dep't of Corr.*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017). The mere fact that state law prescribes certain procedures, such as DOC regulations, "does not mean that the procedures thereby acquire a federal constitutional dimension." *Id*. Simply put, administrative policies generally do not create enforceable rights in inmates sufficient to support a cause of action based on due process. *See Bullock v. Horn*, 720 A.2d 1079, 1082 n.6 (Pa. Cmwlth. 1998).

4

## A. DOC Visitation Policy (DC-ADM 812)

Williams asserted in his Petition and maintains in his brief that Respondents' refusal of visits from his wife and daughter did not comply with DC-ADM 812 ("Inmate Visiting Privileges")[3] and thereby violated due process. Petition at 1; Williams's Br. at 9. The Petition cites Section 1 of DC-ADM 812, which sets forth general rules for visitation privileges. Petition at 1. Based on the memorandum of law filed by Williams with his Petition, the relevant provisions of DC-ADM 812 require visitors to have a registered account on the DOC's inmate visitation website and to provide necessary information for validation purposes, including a correct address; the policy states that incorrect information and multiple accounts may result in visitation delays. Memorandum of Law at 2-3; DC-ADM 812 at 7-11.

Respondents asserted in their preliminary objections that Williams's allegations failed to assert facts in support of his claims of wrongdoing and failed to state a claim since the mere allegation that the DOC violated its visitation policy does not state a due process claim, particularly when visitation privileges may be suspended for various discretionary reasons. Preliminary Objections at 4 & 7-9. In their brief, Respondents reiterate this position. Respondents' Br. at 14-15.

We first consider the limited question of whether Williams's allegations that Respondents violated DC-ADM 812 entailed a protected liberty or property interest sufficient to support his cause of action. DC-ADM 812 states expressly that it is a DOC policy that "does not create rights in any person." DC-ADM 812 at 1-2. Our case law also holds that DOC policies do not confer personally

---

[3] *Available at* https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/812-inmate-visiting-privileges.pdf (last visited January 12, 2026). Citations to this document use electronic pagination.

enforceable rights sufficient to support a cause of action based on due process under either the federal or Pennsylvania constitutions. *See Shore*, 168 A.3d at 386; *Bullock*, 720 A.2d at 1082 n.6. Because Williams has not identified in DC-ADM 812 a "constitutionally-protected liberty or property interest" that is not "limited by Department regulations but is affected by a final [DOC] decision," this Court lacks original jurisdiction to consider this aspect of his claims. *See Gentilquore*, 326 A.3d at 516.

## B. Due Process: Visitation

This Court has also held that inmates do not have an independent "protected liberty interest in visiting privileges." *Chem v. Horn*, 725 A.2d 226, 229 n.2 (Pa. Cmwlth. 1999), *abrogated on other grounds by Feliciano v. Dep't of Corr.*, 250 A.3d 1269 (Pa. Cmwlth. 2021) (concerning asserted right to remain in general population as opposed to disciplinary or restricted housing; visiting privileges claim deemed not ripe for disposition but noted as lacking a protected liberty interest). *Chem* cited *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989) (*Thompson*), where the United States Supreme Court stated that the denial of prison access to a particular visitor "is not independently protected by the Due Process Clause" because it "is well within the terms of confinement ordinarily contemplated by a prison sentence." 490 U.S. at 461.

In *Earley v. Smith* (Pa. Cmwlth. No. 402 M.D. 2017, filed Apr. 16, 2018), 2018 WL 1788523 (unreported),[4] we explained:

---

[4] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

"Inmates have no constitutional right to visitation. Visitation is a privilege subject to revocation at the discretion of the Warden when necessary to ensure security and maintain order in the institution." [*Flanagan v. Shively*, 783 F.Supp. 922, 934 (M.D. Pa. 1992)]. "Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion." *Id*. In *Chem*, this Court followed the holding in [*Thompson*] and concluded that, for purposes of procedural due process, an inmate does not have "a protected liberty interest in visiting privileges."

In [*Feigley v. Jeffes*, 522 A.2d 179, 183 (Pa. Cmwlth. 1987)], an inmate sought an order compelling prison officials to permit him to receive visits from his religious advisor. In dismissing the claim, this Court relied on department regulations stating that prison officials can terminate or forbid a visit when the visit constitutes a "threat to the security and order of the institution." Even though there was no evidence in the opinion to indicate that the religious advisor presented such a threat, we determined that a writ of mandamus was improper because the writ could not compel the prison officials to perform a discretionary act.

Adhering to this (or a substantially similar) rationale, courts have consistently concluded . . . that there is no inherent right to visitation under any provision of the constitution. *See Neumeyer v. Beard*, 301 F.Supp.2d 349, 351 (M.D. Pa. 2004) ("[I]t is well-settled that there is not a constitutional right to visitation for convicted prisoners, their family and spouses."). Even in those cases where it was assumed that such a right is embodied in the First Amendment (to at least some extent), the courts have concluded that a regulation restricting visitation will withstand constitutional scrutiny if it has a reasonable relationship to a legitimate penological interest.

*Id*., slip op. at 6 n.5, 2018 WL 1788523, at *3 n.5 (some citations omitted).

Here, Williams's Petition asserted that Respondents' denial of visits from his wife and daughter and failure to hold a hearing to address the issue violated due process. Petition at 1-2. In the memorandum of law filed with his petition, he indicated that the denials entailed issues with his wife's change of address and account with the DOC's visitation registration website. Memorandum of Law at 2-4. He avers in his brief that family visits are an "independent fundamental constitutional right." Williams's Br. at 7-15. Respondents' preliminary objections and brief maintain that prison visitation entails no independent due process protections and, as such, Williams's claim lacks legal sufficiency. Preliminary Objections at 7-8; Respondents' Br. at 15-16.

Respondents are correct that prison visitation entails no independent due process protections, the deprivation of which would trigger this Court's original jurisdiction. *Gentilquore*, 326 A.3d at 518. The United States Supreme Court has made clear that the denial of prison access to a particular visitor "is well within the terms of confinement ordinarily contemplated by a prison sentence" and therefore "is not independently protected by the Due Process Clause." *Thompson*, 490 U.S. at 461. Because Williams has not identified a "constitutionally-protected liberty or property interest" in visitation from his wife and daughter, this Court lacks original jurisdiction to consider this aspect of his claims. *See Gentilquore*, 326 A.3d at 516.

## III. Conclusion

For the foregoing reasons, we dismiss Williams's Petition for lack of jurisdiction and dismiss Respondents' preliminary objections as moot.[5]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[5] In addition to his due process claims, Williams indicates in his brief that Respondents' deprivation of visits from his wife and daughter violated his First Amendment association rights and Eighth Amendment protections against cruel and unusual punishment. Williams's Br. at 11-15. He also argues that Respondents' actions violated his wife's due process rights and that Respondents' actions were in retaliation for his having exercised his First Amendment right to file "actions against numerous SCI-Fayette staff." *Id*. at 12-13. Williams did not raise these issues in his Petition. In the appellate context, we may consider an issue raised in a brief if we are able to address it based on the certified record. Pa.R.A.P. 1513(d)(5). However, this matter arises within our original jurisdiction and is before us on Respondents' preliminary objections; we have no record and must "confine our analysis" to Williams's Petition. *See Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). The absence of these issues from Williams's Petition also means that Respondents did not have an opportunity to address them in their preliminary objections. As we have no basis to consider these additional claims, they are waived. *See Coppolino v. Noonan*, 102 A.3d 1254, 1280 (Pa. Cmwlth. 2014) (stating that this Court "has held in original jurisdiction cases that failure to raise an issue in a petition for review or to amend the petition to review to include that issue results in waiver"). We also note that our courts have generally rejected prison visitation arguments based on any claimed constitutional basis because "it is well-settled that there is not a constitutional right to visitation for convicted prisoners, their family and spouses." *Earley*, slip op. at 6-7 n.5, 2018 WL 1788523, at *3 n.5 (quoting *Neumeyer v. Beard*, 301 F.Supp.2d 349, 351 (M.D. Pa. 2004)).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rashad M. Williams,
       Petitioner   :

    v.       :

Pennsylvania Department of
Corrections; SCI-Fayette, S. Greene,
Lobby Officer; Carrie Luster, Unit
Manager; Tina Walker, Facility
Manager,        : No. 108 M.D. 2024
       Respondents :

## **O R D E R**

AND NOW, this 13th day of Janaury, 2026, the "Petition for Review in the Nature of Mandamus" filed in this Court's original jurisdiction on February 12, 2024, by Rashad M. Williams is DISMISSED for lack of jurisdiction. The preliminary objections filed on December 2, 2024, by the Pennsylvania Department of Corrections and SCI-Fayette and on December 30, 2024, by S. Greene, Carrie Luster, and Tina Walker are, therefore, DISMISSED as moot.

_____
CHRISTINE FIZZANO CANNON, Judge